liBROWN, Judge.
In October 1986, plaintiff, Jesse James Johnson, was commissioned as an auxiliary deputy by West Carroll Parish Sheriff Gary Bennett. Shortly thereafter, on January 2, 1987, plaintiff sustained serious knee injuries while assisting in the arrest of a man wanted for writing bad cheeks. Claiming that the full time deputy in command breached the appropriate standard of conduct by failing to handcuff the suspect, plaintiff filed this tort action against the sheriff, the department and its insurer. The trial court rejected plaintiffs demands. We affirm.
PACTS
At the time of the incident, plaintiff was 50 years old and receiving some type of disability retirement from a job in California. While living in California, plaintiff had worked as a patrolman for a private security company after being trained at the Los An-geles Police Academy. Plaintiff was originally from West Carroll Parish and had known Deputy George Johnson all of his life. Plaintiff returned to West Carroll Parish around 1980 and rode with Deputy Johnson on many occasions. Eventually Deputy Johnson obtained for plaintiff the reserve deputy position.
Reserve deputies assisted full time deputies when extra manpower was needed. Reserve deputies always worked with and were supervised by full time deputies. George Johnson was a full-time deputy with the West Carroll Parish Sheriffs Department.
On January 2, 1987, plaintiff was assisting Deputy George Johnson. Plaintiff, who was driving the patrol car, accompanied Deputy Johnson to a house where the suspect was believed to be located. Deputy Johnson went to the front door of the house and plaintiff went to the back entrance. Deputy Johnson brought |2the suspect out of the house and walked with him to the patrol vehicle which was parked on the street.
At trial (in April 1994), Deputy Johnson and plaintiff related conflicting versions of the events leading up to the accident. According to plaintiff, he parked the patrol car on the street approximately 300 feet from the front door. Plaintiff asked Deputy Johnson whether he was going to use handcuffs. As Deputy Johnson walked with the suspect toward the patrol ear, plaintiff grabbed the back of the suspect’s belt. Plaintiff stated that Deputy Johnson instructed him to release the suspect because he was not going to run. Plaintiff estimated that it took approximately ten minutes for the trio to reach the patrol car.
According to plaintiff, Deputy Johnson stood near the back door of the car and he stood near the driver’s door. Plaintiff testified that Deputy Johnson neither frisked the suspect nor had him place his hands on top of the vehicle. At that point, the suspect broke and ran. Denying that he gave chase, plaintiff stated that the suspect knocked him down into a ditch when he took off running.
Plaintiff stated that no one had explained his duties, nor had he received any training as an auxiliary deputy. According to plaintiff, he had no authority to effect an arrest without a full-time deputy. Plaintiffs training at the police academy in California occurred in 1969 or 1970.
Deputy Johnson, who was 57 years old, described the suspect as in his late 20’s and estimated that he was 6 feet tall and weighed 200 pounds. Hospital records showed that plaintiff was 6 feet 5 inches tall and weighed 260 pounds.
Deputy Johnson testified that he received information from the Epps town marshall that the suspect he was looking for was in a house in the Epps |3community. Accompanied by plaintiff, Johnson went to the residence to make an arrest.[1]
Deputy Johnson was admitted into the house by a lady and observed the suspect sitting with two other men. According to Deputy Johnson, no children were present.[2] *714 It was apparent to Deputy Johnson that the suspect knew the sheriffs department had been looking for him. Deputy Johnson instructed the suspect to accompany him out of the house. The two men walked side by side to the patrol car. He did not recall at what point he told the suspect that he was under arrest.
Deputy Johnson stated that he did not handcuff the suspect inside the house because he did not want to start any trouble. Acknowledging his uncertainty of the distance to the police car, the deputy estimated that it was approximately 12 to 15 feet from the driveway to the ear and he was unable to estimate the time it took to walk to the vehicle. Sheriff Bennett testified that from the front door to where the patrol car was parked was 50 to 75 feet.
After having the suspect place his hands on top of the car, Deputy Johnson stated that he frisked him, placed one of the suspect’s hands behind his back and reached for the handcuffs. At this point, the prisoner spun around and raced past plaintiff. Deputy Johnson testified that plaintiff tried to grab but missed the fleeing man. Deputy Johnson said plaintiff ran several steps and fell into the ditch.
A deputy sheriff since 1976, Johnson described his background as including basic law officer training at the police academy at Northeast Louisiana 14University and several continuing education extension classes. He acknowledged that his training included handcuffing an individual each time an arrest was made. Deputy Johnson stated that his method was to take the arrestee to the patrol car prior to putting on the handcuffs.
Several other witnesses testified in court or by deposition. After considering all of the evidence, the trial court noted that Deputy Johnson’s version was corroborated by statements initially made by plaintiff to Sheriff Bennett and Dr. Liles, plaintiff’s treating physician. The trial court found that Deputy Johnson’s conduct did conform to the applicable procedural standard, and did not contribute to plaintiffs injuries.
Plaintiff has appealed from the trial court’s adverse judgment.

DISCUSSION

To prevail on a negligence claim under LSA-C.C. Art. 2315, a plaintiff must establish that:
(1) defendant had a duty to conform his conduct to a specific standard (duty);
(2) defendant failed to conform his conduct to the appropriate standard (breach);
(3) defendant’s substandard conduct was a eause-in-fact of plaintiffs injuries (cause-in-fact);
(4) defendant’s substandard conduct was a legal cause of plaintiffs injuries (scope of protection);
(5) plaintiff sustained actual damages (damages).
Roberts v. Benoit, 605 So.2d 1032 (La.1991); Fowler v. Roberts, 556 So.2d 1 (La.1989).
The deposition of plaintiffs treating physician, Dr. Douglas Liles, was introduced into evidence. Dr. Liles stated that plaintiff related to him that he was Rrunning after a thief in the dark when he stepped into a ditch and injured his knees.
Sheriff Bennett visited plaintiff at the emergency room. Plaintiff told the sheriff that the suspect broke and ran and during the chase, plaintiff stepped into a ditch and hurt himself. The sheriff stated that his department did not have a written arrest policy and relied upon the officers’ training and judgment.
Jack Wright, an attorney and former criminal justice professor, was accepted by the court as an expert in criminology, specifically police training. Wright noted that plaintiff had not received retraining when commissioned as an auxiliary deputy. Wright also noted that there was no departmental standard regarding the use of handcuffs. In Wright’s view, Deputy Johnson’s failure to handcuff the suspect before leaving the house fell below the standard expected of a police officer which required that a suspect be handcuffed when the arrest scene is secured. Wright also stated that having the suspect place his hands on the car was insufficient because the suspect was not first immobilized.
*715 Captain Glen Springfield, assistant commander of the patrol division and coordinator of the reserve deputies for the Ouachita Parish Sheriffs Office, testified that the Ouachi-ta Parish sheriffs policy was to handcuff everyone arrested. He noted, however, that the point at which an arrest was effected could vary. Por example, an officer could walk a person out of a bar before placing him under arrest. Removal of a suspect from a business establishment or residence serves the purposes of taking the suspect away from people who might attempt to assist him and getting the officer closer to his backup. Captain Springfield could not find fault with the decision made by Deputy Johnson to avoid a confrontation by moving the suspect out of the house and to the vehicle prior to placing him in handcuffs.
1 fiChief Deputy Charles McDonald of the Richland Parish Sheriffs Office stated that he had no problem with a deputy removing a suspect from a residence prior to handcuffing him. According to Deputy McDonald, such an action did not fall below the standards of acceptable procedure in his department or other departments in his area. Deputy McDonald stated that it was his policy to handcuff a suspect as soon as practicable.
Chief Criminal Deputy Marion Bankston, Morehouse Parish Sheriffs Office, acknowledged that it was appropriate procedure to handcuff a person being arrested. In his opinion, it was acceptable for Deputy Johnson to remove the suspect from the house and take him to the patrol car to prevent a possible confrontation with other individuals at the residence.
Great deference is to be given to the trier of fact’s findings. Rosell v. ESCO, 549 So.2d 840 (La.1989). This deference includes the effect and weight to be given to expert testimony. When there are contradictory opinions concerning compliance with the standard of care, the trier of fact’s conclusions may not be reversed on appeal unless clearly wrong or manifestly erroneous. Bolton v. Louisiana State University Medical Center, 601 So.2d 677 (La.App.2d Cir.1992).
The trial court found the account related by Deputy Johnson to be more credible than plaintiffs. While all experts who testified agreed that it was accepted procedure to handcuff a suspect at the time of arrest, three law enforcement officials opined that Deputy Johnson’s actions in removing the suspect from the residence and walking him to the patrol car without first placing him in handcuffs were appropriate. We conclude that the record contains ample support for the trial court’s factual findings concerning the standard of care and that Deputy Johnson did not breach that standard.
|7The trial court did not err in finding that Deputy Johnson’s actions did not fall below the appropriate standard of conduct. Because we find no error in the trial court’s finding that no breach occurred, we do not reach the issues of causation or foreseeability.

CONCLUSION

For the reasons set forth above, the trial court’s judgment is AFFIRMED.

. Deputy Johnson recalled that a bench warrant had been issued for the suspect, who was charged with writing bad checks.

. However, plaintiff remembered there being children in the house.